Case No. 25-10572

# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
# 𝕱𝖔𝖗 𝖙𝖍𝖊 𝕱𝖎𝖋𝖙𝖍 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

In the Matter of With Purpose, Incorporated,

Debtor

James N. Ayers; the J. Nicholas Ayers 2021 Irrevocable Trust; Ayers Family
Holdings, L.L.C.,

Appellants

v.

Toby Neugebauer,

Appellee

## BRIEF OF APPELLANTS

*Appeal from the*
*United States District Court for the Northern District of Texas*
*No. 3:23-CV-02250-L*

CHASE J. POTTER
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com

IACUONE MCALLISTER POTTER PLLC
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone:  (214) 432-1536

ATTORNEY FOR APPELLANTS

1

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellee: | Counsel for Appellee: |
|---|---|
| Toby Neugebauer | Ryan Downton<br>The Texas Trial Group, PC<br>875 Carr 694, Ste. 103<br>Dorado, Puerto Rico 00646 |

| Appellants: | Counsel for Appellants: |
|---|---|
| James Nicholas Ayers;<br>The J. Nicholas Ayers 2021 Irrevocable Trust; and<br>Ayers Family Holdings, LLC | Chase J. Potter<br>Iacoune McAllister Potter PLLC<br>Energy Square one<br>4925 Greenville Ave., Suite 1112<br>Dallas, Texas 75206 |

*/s/ Chase J. Potter*
Attorney of record for Appellants

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants believe the decisional process would be significantly aided by oral argument and, therefore, request oral argument. This appeal involves important legal issues regarding the reach of the Bankruptcy Code's automatic stay and which parties have standing to pursue damages related to alleged stay violations. The factual circumstances related to the alleged stay violations (and the capacity in which Neugebauer claims to have been harmed) are important factors in deciding this appeal. Appellants request the opportunity to address any questions the panel may have regarding these factors (or any other issues) during oral argument.

# **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ........................................................................7

    Basis for the District Court's Jurisdiction ......................................................7

    Basis for this Court's Jurisdiction ..................................................................7

    Filing Dates Establishing Timeliness of Appeal ...........................................7

    Finality of Order .............................................................................................8

STATEMENT OF THE ISSUES..........................................................................8

STATEMENT OF THE CASE..............................................................................9

SUMMARY OF THE ARGUMENT ..................................................................13

ARGUMENT .......................................................................................................15

    A. Standard of Review ..................................................................................15

    B. The Judgment should be reversed and vacated because Neugebauer lacks
       the requisite standing to pursue monetary relief for alleged stay violations
       ...................................................................................................................16

    C. Even if Neugebauer had standing (he does not), the Judgment should still
       be reversed because Appellants did not violate the automatic stay .........27

    D. Neugebauer should not be rewarded for his gamesmanship and unclean
       hands.........................................................................................................32

    E. Alternatively, if the Court does not reverse the Judgment in its entirety, the
       monetary damages should be significantly reduced.................................34

       (1) Neugebauer would have incurred the vast majority of the attorney's
           fees awarded in the Judgment irrespective of any alleged stay violations
           ...........................................................................................................36

       (2) Neugebauer is culpable for any fees incurred on an allegedly
           "emergency" basis..............................................................................39

       (3) Neugebauer cannot recover any fees incurred in relation to his secret
           State Court Lawsuit............................................................................45

       (4) Neugebauer cannot recover any fees that have no relation to the
           Arbitration or Appellants ..................................................................46

       (5) Neugebauer cannot recover any unreasonable and/or unnecessary fees
           that resulted from Neugebauer's legion of attorneys performing
           duplicative or unnecessary work.......................................................46

CONCLUSION ....................................................................................................47

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*, 468 U.S. 737 (1984) ...........................................................16

*Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001) .............................................28

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004)...................................16

*GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711 (5th Cir. 1985) ...........27

*In re Ampal-American Israel Corp.*, 502 B.R. 361 (Bankr. S.D.N.Y. 2013) ...............
..................................................................... 17, 18, 19, 20, 21, 23, 24, 25, 26

*In re Divine Ripe, LLC*, 538 B.R. 300 (Bankr. S.D. Tex. 2015) .......................28, 30

*In re Emergency Room Mobile Services, L.L.C.*, 529 B.R. 676 (N.D. Tex. 2015)......
.......................................................................... 20, 21, 22, 23, 24, 25

*In re Sw. Bell Telephone Co.*, 35 S.W.3d 602 (Tex. 2000)........................................28

*In re Taylor*, No. 15-31208 (AMN), 2019 WL 4281896 (Bankr. D. Conn. Sept. 10, 2019) ....................................................................................................26

*Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).............................17, 31

*Law v. Siegel*, 571 U.S. 415 (2014)..........................................................................27

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)........................................16, 27

*Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816 (5th Cir. 2003).....
...........................................................................................................27, 28

*St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533 (5th Cir. 2009) ...............
...........................................................................................................18, 22

*Warth v. Seldin*, 422 U.S. 490 (1975)......................................................................16

**Statutes**

28 U.S.C. § 158 ....................................................................................7

28 U.S.C. § 362 .......................... 8, 12, 14, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28

## JURISDICTIONAL STATEMENT

**Basis for the District Court's Jurisdiction**

The District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158, which provides, in relevant part, "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees." *See* 28 U.S.C. § 158(a)(1). This appeal concerns a judgment issued by the Bankruptcy Court against Appellants James Nicholas Ayers, the J. Nicholas Ayers 2021 Irrevocable Trust, and Ayers Family Holdings, LLC (collectively, "Appellants" or the "Ayers Parties") related to alleged stay violations. (ROA.54-56).

**Basis for this Court's Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158, which provides, in relevant part, "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." *See* U.S.C. § 158(d)(1). This appeal concerns a request for relief from a judgment issued by the Bankruptcy Court with respect to Appellants and the final judgment affirming such ruling from the District Court. (ROA.2305).

**Filing Dates Establishing Timeliness of Appeal**

On March 28, 2025, the District Court signed the Judgment ("Judgment") and accompanying Memorandum Opinion and Order ("Opinion"), affirming the Bankruptcy Court's October 2, 2023, Order Regarding Amended Motion for Entry

of an Order (I) Determining that Appellants Violated the Automatic Stay, (II) Vacating Certain Actions of the Arbitrator, and (III) Awarding Neugebauer Actual and Punitive Damages Pursuant to 11 U.S.C. § 362(k) (the "Order"). (ROA.2292-2305). Appellants timely filed their Notice of Appeal on April 25, 2025. (ROA.2306-2307).

**Finality of Order:**

The District Court's Judgment (ROA.2305) is final and appealable because it issued a monetary judgment against Appellants in relation to alleged violations of the automatic stay.

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred in issuing its Judgment (ROA.2305) and affirming the Bankruptcy Court's Order awarding damages against Appellants in the amount of $103,997.79 (ROA.54-56).

2.     Whether the District Court erred in determining that Appellants waived any arguments through either inadequate briefing or failure to brief any issues.

3.     Whether the District Court erred in affirming the Bankruptcy Court's determination that Appellants willfully violated the automatic stay.

4.     Whether the District Court erred in affirming the Bankruptcy Court's determination that Neugebauer has standing to (i) pursue claims for alleged

violations of the automatic bankruptcy stay against Appellants, and/or (ii) recover the damages Neugebauer sought from Appellants for alleged stay violations.

5.    Whether the District Court erred in affirming the Bankruptcy Court's order awarding Neugebauer actual damages in relation to the alleged stay violations.

6.    Alternatively, whether the District Court erred in affirming the Bankruptcy Court's determination regarding the amount of actual damages to be awarded to Neugebauer.

## STATEMENT OF THE CASE

On August 17, 2022, Appellants filed their original statement of claim against Neugebauer in the JAMS Arbitration (the "Arbitration") in addition to counterclaims against the Debtor. (ROA.449-482). Subsequently, Appellants filed their Supplemental Statement of Claim against Neugebauer asserting additional claims against Neugebauer *only* for (1) defamation, (2) business disparagement, (3) tortious interference with existing contracts, and (4) tortious interference with prospective business relations. (ROA.571-77).

On February 8, 2023, With Purpose, Inc. d/b/a GloriFi (the "Debtor") filed the underlying Chapter 7 bankruptcy proceeding. (ROA.58). The filing of the bankruptcy stayed Appellants' claims against the Debtor.

On February 15, 2023, counsel for Appellants sent JAMS a letter (copying Neugebauer on same) notifying the arbitrator that Appellants had received notice

indicating the Debtor filed bankruptcy under Chapter 7. (ROA.684-85). The letter included the following:

> "The bankruptcy involves only Counter-Respondent With Purpose, Inc. d/b/a GloriFi and does not involve Toby Neugebauer individually and [Ayers] intends to continue prosecuting [his] claims against Toby Neugebauer individually."

(ROA.684).

On February 27, 2023, Appellants filed their Motion to Compel Neugebauer's deposition in the Arbitration. (ROA.703-09). Counsel for Appellants provided Neugebauer a copy of the Motion to Compel via e-mail (once again alerting Neugebauer that Appellants were prosecuting their claims against him in the Arbitration). (ROA.713).

On March 2, 2023, the Arbitrator signed an Order compelling Neugebauer to sit for his deposition on March 17, 2023. (ROA.714-15). Within that Order, the Arbitrator addressed the issue of whether the stay applies to the Arbitration and found as follows:

> *"Ayers' original Counterclaim stated against With Purpose, Inc. d/b/a GloriFi was stayed following its filing Petition in Bankruptcy. **The stay does not apply to the individual, Toby Neugebauer and Ayers is entitled to proceed to prosecute his claims against Neugebauer.**"*

(ROA.715) (emphasis).

Neugebauer did not attend his deposition on March 17 as ordered by the Arbitrator. Thus, on March 23, 2023, Appellants filed a Motion for Sanctions against

Neugebauer. (ROA.716-724). Counsel for Appellants provided Neugebauer a copy of the Motion for Sanctions via e-mail (again alerting Neugebauer that the Arbitration was not stayed). (ROA.730).

On April 25, 2023, after providing Neugebauer more than sufficient time to respond to the Motion for Sanctions, the Arbitrator signed an order requiring Neugebauer to appear on May 3, 2023, for his deposition and stated that "Neugebauer's failure to comply with this ORDER will result in sanctions." (ROA.731-32). The Arbitrator also scheduled a status conference for May 8, 2023. Neugebauer once again failed to attend the deposition ordered by the Arbitrator.

The Arbitrator held the hearing on May 8, 2023, and subsequently issued an order imposing monetary sanctions against Neugebauer and requiring Neugebauer to appear for his deposition on May 23, 2023 (a date that was agreed upon, or – at minimum – not objected to, by Neugebauer and his counsel during the hearing). (ROA.701-02).

On May 17, 2023, Neugebauer filed his Motion for Emergency Hearing on Motion for Entry of an Order Enforcing the Automatic Stay against Appellants. (ROA.83-86). On May 18, 2023, Appellants filed their Initial and Expedited Response to Neugebauer's Emergency Motion for Entry of an Order Extending Automatic Stay and Brief in Support. (ROA.662-676).

The Bankruptcy Court denied Neugebauer's request to consider his motion on an expedited basis. (ROA.137-139). On June 30, 2023, Neugebauer filed his Amended Motion for entry of an Order: (I) Determining that Appellants Violated the Automatic Stay; (II) Vacating Certain Actions of the Arbitrator; and (III) Awarding Neugebauer Actual and Punitive Damages Pursuant to 11 U.S.C. § 362(k) and Brief in Support Thereof (the "Amended Motion"). (ROA.613-629). On July 13, 2023, Appellants filed their Response and Brief in Opposition to Neugebauer's "Amended" Motion Regarding Alleged Stay Violations. (ROA.738-752).

The Bankruptcy Court held various hearings regarding Neugebauer's Amended Motion and related issues. (ROA.1584-1706). The final hearing (at which the Bankruptcy Court heard argument from counsel for the parties) was held on July 28, 2023. (ROA.1712-1900). On August 9, 2023, as permitted by the Bankruptcy Court, Appellants submitted post-hearing briefing in opposition to Neugebauer's Amended Motion and request for damages. (ROA.2160-2173).

On September 13, 2023, the Bankruptcy Court held a conference at which the Bankruptcy Court provided its oral bench ruling on various pending issues, including Neugebauer's Amended Motion, and indicated that written orders memorializing the oral ruling would follow. (ROA.2057-2103). On September 27, 2023, Appellants filed their Notice of Appeal. (ROA.44-47).

On October 2, 2023, the Bankruptcy Court signed the Order in which the Bankruptcy Court issued judgment against Appellants and in favor of Neugebauer in the following amounts: (i) $103,997.79 (in relation to the alleged "damages," which consisted exclusively of attorney's fees, that Neugebauer claimed he suffered as a result of the alleged violations of the automatic stay), and (ii) $7,984.99 (in relation to the sanctions award issued against Neugebauer in the Arbitration that the Bankruptcy Court held was obtained in violation of the automatic stay and, therefore, void). (ROA.54-56).

On March 28, 2025, the District Court issued a Judgment, and accompanying Opinion, affirming the Bankruptcy Court's Order. (ROA.2292-2305). This appeal follows.

## SUMMARY OF THE ARGUMENT

This appeal involves the extensive efforts by Neugebauer – a non-debtor (and, in fact, purported billionaire) – to wrongfully extend the protections of the Bankruptcy Code's automatic stay (which extended to the Debtor only) to shield himself from personal liability in relation to significant individual (*i.e.*, non-derivative) claims being asserted against Neugebauer by Appellants.

The Trustee agrees that the claims Appellants are pursuing against Neugebauer in the Arbitration belong to Appellants (not the Debtor's estate). Even the Bankruptcy Court signed an order permitting Appellants to move forward in the

Arbitration with the claims against Neugebauer – notwithstanding the continued pendency of the Debtor's bankruptcy proceeding.

Given the Trustee's position and the Bankruptcy Court's order permitting Appellants to continue pursuing their claims against Neugebauer, it is contradictory to say Appellants somehow violated the automatic stay by pursuing those same individual claims against Neugebauer (a non-debtor). But that is exactly what the Judgment does. Even worse, the Judgment awards Neugebauer "actual damages," which consist exclusively of attorney's fees Neugebauer incurred in his capacity as a defendant (not in his alleged capacity as a creditor of the Debtor). The Judgment should be reversed and vacated for numerous reasons outlined in this brief and summarized in this section.

First, as established by the on-point case law cited herein, Neugebauer does not have standing to seek, much less recover, any monetary damages from Appellants in relation to Neugebauer's misguided contention that Appellants (non-debtors) somehow violated the automatic stay under 11 U.S.C. § 362 by pursuing their personal claims against another non-debtor (Neugebauer). The Judgment should be reversed and vacated for this reason alone.

Even if Neugebauer had standing (he does not), the Judgment should still be reversed and vacated. Neugebauer incorrectly claims that Appellants violated the automatic stay by asserting estate claims against Neugebauer in the pending

Arbitration. But Neugebauer is the *only* party making this claim and is *only* doing so for self-preservation – *i.e.*, as part of Neugebauer's efforts to wrongfully extend the automatic stay to shield himself from significant personal liability.

The Trustee did not seek any stay violations against Appellants – far from it. Instead, the Trustee entered into a stipulation with Appellants to make clear that the claims being pursued by Appellants against Neugebauer in the Arbitration are *not* estate claims and, thus, do *not* violate the automatic stay. (ROA.2047-2050). Put simply, Appellants did not violate the automatic stay and, therefore, the District Court erred in issuing the Judgment.

Alternatively, in the event this Court does not reverse and vacate the Judgment as requested herein, the monetary damages awarded to Neugebauer should be significantly reduced (if not eliminated) for the reasons set forth in Section D of the Argument portion of this Brief, *infra*.

## ARGUMENT

### A.    Standard of Review

For each of the issues addressed herein, the Court reviews the District Court's legal conclusions *de novo* and factual findings for clear error.

**B.**   **The Judgment should be reversed and vacated because Neugebauer lacks the requisite standing to pursue monetary relief for alleged stay violations.**

The request by Neugebauer (a non-debtor) for an award of monetary damages against Appellants (also non-debtors) for alleged stay violations is fatally flawed and should have been denied by both the Bankruptcy Court and the District Court, because federal case law makes clear that Neugebauer lacks the necessary standing to pursue the relief Neugebauer sought.

The party invoking federal jurisdiction bears the burden of establishing its standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Neugebauer lacks prudential standing to pursue a claim for damages under the automatic stay statute.

"Prudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "Prudential limitations on

16

standing are especially important in bankruptcy proceedings which often involve numerous parties who may seek to assert the rights of third parties for their own benefit." *In re Ampal-American Israel Corp.*, 502 B.R. 361, 369 (Bankr. S.D.N.Y. 2013); *see also Kane v. Johns-Manville Corp.*, 843 F.2d 636, 644 (2d Cir. 1988) ("The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself.").

*In re Ampal-American Israel Corp.* (hereinafter, "*Ampal-American*") is highly instructive because the facts are strikingly similar, and the court's holding/reasoning explains why Neugebauer is without prudential standing to pursue his claim for damages resulting from an alleged violation of the automatic stay and, thus, why Neugebauer's request for monetary relief in relation to alleged stay violations should have been denied by the Bankruptcy Court and the District Court.

The movants in *Ampal-American*, like Neugebauer here, was the principal shareholder, chairman of the Board, and Chief Executive Officer of the debtor. *See In re: Ampal-American Israel Corp.*, 502 B.R. at 365. The movants' motion sought damages based on an alleged violation of the automatic stay relating to a demand for payment made upon the movants by an attorney for certain bondholders of the

debtor. *Id.* The movants, like Neugebauer here, claimed the respondents were attempting to pursue claims that belonged to the estate and, thus, had violated the automatic stay. *See id.* at 365-67.

In analyzing the issue of prudential standing, the court stated that § 362(k)(1) is subject to two limitations. "First, the creditor seeking relief must allege an injury ***in his capacity as a creditor*** of the estate rather than in some other capacity." *Ampal-American*, 502 B.R. at 370-71 (emphasis); *see also St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 545 (5th Cir. 2009) ("We hold: pursuant to § 362(k), the Labuzans, as *pre-petition creditors* of CTL, have standing to assert a claim against St. Paul. Accordingly, to the extent the Labuzans' claims are based on their status as *owners/equity holders* of CTL, § 362(k) cannot be invoked."). "In other words, ***the fact that someone is a pre-petition creditor is not a foot in the door that allows the creditor to recover damages for injuries suffered to its non-creditor interests***." *Ampal-American*, 502 B.R. at 371 (emphasis added). "Second, the creditor must assert a claim for his own direct injury and not a claim that belongs to the estate." *Id.* (citing *Labuzan*, 579 F.3d at 545).

The *Ampal-American* court found that the movants failed to show the injuries they alleged fell within the zone of interests protected by the automatic stay sufficient to confer prudential standing. *See id.* at 372-73. The court stated that "the successful assertion of an estate claim by [the respondent] would cause a generalized

injury to the estate and an indirect injury to all creditors by possibly reducing the pool of assets available for distribution. Every creditor could assert the same claim. Hence, ___**only the trustee has the authority to assert the claim**___." *Id.* (emphasis added). The *Ampal-American* court further found, however, that the movants were not alleging this type of injury – *i.e.*, a violation of the automatic stay causing generalized damages to the estate and all creditors and, thus, an injury actionable by the trustee. *See id.* at 373.

Instead, just like Neugebauer here, the movants claimed they would be damaged not because they would receive a smaller distribution on their creditor claims but, instead, because the movants must defend against the claims being asserted against them. *See id.* The *Ampal-American* court held the movants lacked prudential standing to pursue such alleged damages for the claimed violation of the automatic stay and, in support of its holding, stated as follows:

> "*As noted, the automatic stay was designed to protect pre-petition creditors from a grabbing creditor whose acts adversely* affected *their distribution;* **it was not designed to protect potential defendants who also happen to be creditors of the estate** [*e.g.*, Neugebauer]."

*Id.* (emphasis added).[1]

---

[1] The *Ampal-American* court further stated: "Nor have the Movants cited any authority to support their underlying contention that an individual sued by a third party in violation of the automatic stay is entitled to recover his attorneys' fees under 11 U.S.C. § 362(k)(1), a contention which, if accepted, would significantly alter the

The *Ampal-American* opinion has been favorably cited by the Northern District of Texas (the district from which the Judgment arises). *See, e.g.*, *In re Emergency Room Mobile Services, L.L.C.*, 529 B.R. 676, 685 (N.D. Tex. 2015). *In re Emergency Room Mobile Services* also involved the issue of standing to pursue damages for an alleged violation of the automatic stay. *See id.* at 684-87. In that case, Judge Boyle cited *Ampal-American* (and other opinions) and found that the movant's alleged injuries--just like Neugebauer's alleged injuries--could not plausibly relate to his interests as a creditor in the debtor's bankruptcy. *Id.* at 687. Instead:

> "Almost all of [the movant's] alleged injuries concern harms in his *non-creditor/personal* capacity, including his arrest, costs associated with defending himself in the criminal proceedings, his loss of the treasurer position for his homeowner's association, and the mental and emotional distress he suffered during the process."

*Id.* (emphasis in original).

Judge Boyle held that "[t]hese alleged injuries bear no plausible connection to [the movant's] interest as a creditor of the Debtor" and, therefore, dismissed the movant's 362(k) claims for lack of standing. *Id.*

Neugebauer lacks standing to pursue 362(k) claims for damages for the same reasons as the movants in *Ampal-American* and *In re Emergency Room Mobile Services*. Neugebauer is not alleging any harm in his capacity as an alleged creditor

---

American Rule that each litigant must bear its own legal fees and expenses." *In re Ampal-American Israel Corp.*, 502 B.R. 361, 373 (Bankr. S.D.N.Y. 2013).

of Debtor. Instead, the alleged injuries Neugebauer claims concern harms in Neugebauer's personal capacity; specifically, the costs Neugebauer has incurred, and will continue to incur, in defending himself against the individual and direct claims Appellants have asserted against Neugebauer individually in the Arbitration. (ROA.623-26). But the automatic stay "was not designed to protect potential defendants [like Neugebauer] who also [may] happen to be creditors of the estate." *In re Ampal-American Israel Corp.*, 502 B.R. at 373.

During the hearing on Neugebauer's Motion, Neugebauer's counsel briefly attempted to distinguish *Ampal-American* and *Emergency Room Mobile* by claiming that "the biggest difference in the *Ampal* case as well as the *Emergency Room* case is that in both of those cases, the parties that were seeking 362(k), seeking violation of stay damages, were not creditors of the estate" and, according to Neugebauer's counsel, "that court specifically pointed out, hey, you're not creditors." (ROA.1819). This argument is unavailing and should be rejected because it is inaccurate. Specifically, the argument made by Neugebauer's counsel misinterprets Judge Boyle's analysis and holding in *Emergency Room Mobile*.

In *Emergency Room Mobile*, Judge Boyle stated, "[i]n this case, Marable [the individual seeking 362(k) damages] asks the Court to simply apply the holding from *Labuzan* and find that he has prudential standing under § 362(k) ***as a creditor in the Debtor's bankruptcy***." *In re Emergency Room Mobile*, 529 B.R. at 686 (emphasis).

That is *exactly* what Neugebauer asked the Bankruptcy Court to do in this case – *i.e.*, find that Neugebauer has standing to pursue alleged damages under § 362(k) simply because Neugebauer claims to be a creditor of the Debtor's estate. Judge Boyle rejected the very same argument being made by Neugebauer in *Emergency Room Mobile*, and Appellants request that this Court do the same.

During the hearing on Neugebauer's Motion, Neugebauer's counsel argued that "the determination of standing with regards to a party seek[ing] 362(k) relief" is the Fifth Circuit's opinion in *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533 (2009). (ROA.1814-15). In *Emergency Room Mobile*, Judge Boyle agreed that "the question of whether [the alleged creditor] has prudential standing to bring suit under § 362(k) is controlled by the Fifth Circuit's decision in *Labuzan*." *See In re Emergency Room Mobile*, 529 B.R. at 685. However, Judge Boyle's analysis and application of *Labuzan* does not align with the inaccurate summary Neugebauer's counsel offered of the *Labuzan* holding.

During the hearing, Neugebauer's counsel claimed that the "long and short of that, the holding of the *Labuzan* case, the Fifth Circuit came down and says, look, if you're a creditor, you have standing . . . . you have prudential standing, you can assert 362(k) claims." (ROA.1814-15). But that is ***not*** what this Court held in *Labuzan.*

22

Both *Emergency Room Mobile* and *Ampal-American* heavily cited, relied on, and analyzed this Court's opinion in *Labuzan*. And those highly instructive opinions from Judge Bernstein and Judge Boyle (which are outlined herein) show that the *Labuzan* opinion is far more limited than what Neugebauer argued. As discussed below, *Labuzan* does not stand for Neugebauer's proposed proposition that the prudential standing inquiry essentially ends once it is determined that the individual seeking damages for an alleged violation of the automatic stay under § 362(k) is an alleged creditor of the Debtor's estate.

Judge Boyle stated that "the Fifth Circuit clarified the limits of its holdings in *Labuzan*" as follows:

> "For one, it noted that while the Labuzans had standing under § 362(k) 'as *pre-petition creditors* of CTL,' they would not have standing 'to the extent the Labuzans' claims are based on their status as *owners/equity holders* of CTL.' In addition, the Fifth Circuit indicated that it gave no consideration as to 'what, if any, injuries claimed by the Labuzans were sustained in their capacity as CTL's creditors' – an issue for which, the lower court had previously found, 'material issues of fact existed.'"

*In re Emergency Room Mobile*, 529 B.R. at 686 (emphasis in original and internal citations omitted).

Thus, this Court did not hold in *Labuzan* that "if you're a creditor, you have standing," as Neugebauer claims. In fact, Judge Bernstein actually cited *Labuzan* in support of the proposition that "the creditor seeking relief must allege an injury in his capacity as creditor of the estate rather than in some other capacity." *See In re*

*Ampal-American*, 502 B.R. at 371 (citing *Labuzan*, 579 F.3d at 545). Judge Bernstein further stated that (i) the automatic stay was "not designed to protect potential defendants who also happen to be creditors of the estate [*e.g.*, Neugebauer]," and (ii) "the fact that someone is a pre-petition creditor is not a foot in the door that allows the creditor to recover damages for injuries suffered to its non-creditor interests." *Id.* at 371, 373. Again, that is exactly what Neugebauer is trying to do here – *i.e.*, Neugebauer is attempting to recover alleged "damages" that were suffered, if at all, to his non-creditor interests.

The only evidence of alleged "damages" Neugebauer introduced during the hearing on his Motion related to the attorney's fees Neugebauer incurred in relation to the claims being asserted by Appellants against Neugebauer in the Arbitration. Thus, just like in *Emergency Room Mobile*, Neugebauer's "alleged injuries do not plausibly relate to his interests as an [alleged] creditor in Debtor's bankruptcy" and, instead, Neugebauer's "alleged injuries concern [alleged] harms suffered in his *non-creditor/personal* capacity." *In re Emergency Room Mobile*, 529 B.R. at 687 (emphasis in original).

This dispositive issue (*i.e.*, that Neugebauer's alleged "damages" relate only to his non-creditor/personal capacity) cannot seriously be disputed because – ***even if Neugebauer wasn't an alleged creditor of Debtor*** – Neugebauer ***still*** would have incurred the same attorney's fees he sought to recover under § 362(k) from the

Bankruptcy Court. The alleged "damages" Neugebauer sought (and which were partially awarded in the Judgment) have ***nothing*** to do with Neugebauer's interests as an alleged creditor of the Debtor and, instead, relate exclusively to Neugebauer's personal capacity (specifically, Neugebauer's personal capacity as a defendant in the Arbitration).[2]

Thus, Neugebauer lacks prudential standing to recover the damages awarded to him in the Judgment under § 362(k) pursuant to Judge Bernstein's holding in *Ampal-American* and Judge Boyle's holding in *Emergency Room Mobile* (both of which align with, and are based on, this Court's holding in *Labuzan*).[3]

---

[2]    The monetary sanctions issued against Neugebauer in the Arbitration are subject to the same analysis because such alleged "damages," which were awarded to Neugebauer in the Appealed Order and should be reversed, are not recoverable under § 362(k) because they relate exclusively to Neugebauer's personal capacity (instead of his interests as an alleged creditor of the Debtor).

[3]    The Tenth Circuit has also analyzed and relied on *Labuzan* to reach the same conclusion (*i.e.*, that a creditor cannot recover damages related to an alleged stay violation if the alleged stay violation does not harm the creditor in his creditor capacity). Specifically, the Tenth Circuit stated as follows: "As the Fifth Circuit explained, the automatic stay's specific purposes are to protect the debtor from collection efforts and to protect creditors from inequitable treatment. So § 362(k)'s zone of interests extends to debtors and creditors when they allege those types of harms. ***But when a creditor alleges an injury in some capacity other than as a creditor, the automatic stay's goal of ensuring equal creditor treatment isn't implicated*** . . . . Lee may be the Peepleses' creditor, but McCardle's alleged automatic-stay violation didn't harm him in that capacity. Lee's claim for damages [like Neugebauer's here] therefore falls outside of § 362(k)'s zone of interests. Accordingly, we agree that Lee's § 362(k) claim must be dismissed." *In re Peeples*, 880 F.3d 1207, 1216 (10th Cir. 2018) (citing *Labuzan*, 579 F.3d at 540, 545) (emphasis).

Moreover, as stated by Judge Bernstein in *Ampal-American*, "[n]or have the Movants cited any authority to support their underlying contention that an individual sued by a third party in violation of the automatic stay is entitled to recover his attorneys' fees under 11 U.S.C. § 362(k)(1), a contention which, if accepted, would significantly alter the American Rule that each litigant must bear its own legal fees and expenses." *In re Ampal-American*, 502 B.R. at 373. Similarly, Neugebauer has failed to cite any such authority. The lack of supporting authority for Neugebauer's position (i) constitutes a separate and independent reason why the alleged "damages" Neugebauer seeks are not recoverable under § 362(k), and (ii) highlights the fact that such alleged "damages" are not within the "zone of interests" protected by § 362(k) rendering Neugebauer without prudential standing.

For these reasons, Neugebauer lacks prudential standing to seek and/or obtain monetary damages for the alleged stay violations and, thus, the Judgment should be reversed in its entirety (other than with respect to the correct denial of Neugebauer's request for an award of punitive damages against Appellants).[4] Neugebauer bears

---

[4]    Neugebauer did not invoke § 105 in his Motion, but he made passing references to the provision during the hearing on Neugebauer's Motion. Because Neugebauer failed to move under § 105, the Appellants contend that it would be improper to issue any sanctions or award under § 105 for that reason alone. Moreover, one federal court stated that "exercising discretion and awarding relief to a party pursuant to § 105 is inappropriate when the moving party lacks prudential standing under the specific statutory provision – here, § 36[2](k) – that was created by Congress to afford relief for violations of the automatic stay." *In re Taylor*, No. 15-31208 (AMN), 2019 WL 4281896, at *10 (Bankr. D. Conn. Sept. 10, 2019)

the burden to establish his standing. *See Lujan*, 504 U.S. at 560. Neugebauer failed to satisfy this burden. Reversal is therefore the proper result.

**C.    Even if Neugebauer had standing (he does not), the Judgment should still be reversed because Appellants did not violate the automatic stay.**

Even if Neugebauer had standing (he does not), the Judgment should still be reversed and vacated because the claims being pursued by Appellants against Neugebauer in the Arbitration do not implicate or violate the automatic stay (*i.e.*, there were no stay violations).

"The purposes of the bankruptcy stay under 11 U.S.C. § 362 "are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)). "By its terms the automatic stay *applies only to the debtor*, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors." *Id.* (quoting *GATX Aircraft*, 768 F.2d at 716) (emphasis added).

---

(citing *Law v. Siegel*, 571 U.S. 415, 421 (2014) ("a statute's general permission to take actions of a certain type must yield to specific prohibition found elsewhere"). Thus, Neugebauer should not be permitted to utilize § 105 as a backdoor to avoid his lack of prudential standing (especially considering that Neugebauer failed to raise § 105 and, thus, should be deemed to have waived any alleged reliance on same).

While there are some limited exceptions, this Court has held that "[s]ection 362 is rarely, however, a valid basis on which to stay actions against non-debtors." *Id.* (quoting *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001). This is not one of those rare cases that justifies extending the automatic stay to claims being asserted by a non-debtor (Appellants) against another non-debtor (Neugebauer).

In addition to the Fifth Circuit precedent, the Texas Supreme Court has squarely addressed this issue and held that, under these circumstances, the claims against Neugebauer personally are not impacted by the automatic stay provided in 11 U.S.C. § 362(a). Specifically, the Texas Supreme Court has stated as follows with respect to the impact (or lack thereof) of the automatic stay on claims against non-debtors like Neugebauer:

> "When a defendant files a bankruptcy petition, an automatic stay goes into effect and abates any judicial proceeding against that party. However, the stay only operates against the debtor, and does not operate against non-debtors or even co-debtors, co-tortfeasors, or co-defendants. Further, courts have recognized that an express severance is not required for the proceedings to continue against the non-debtor."

*In re Sw. Bell Telephone Co.*, 35 S.W.3d 602, 604 (Tex. 2000).

Neugebauer bears the high burden of establishing that one of the "rare exceptions" to the general rule applies and justifies extending the automatic stay to him (a non-debtor). *See In re Divine Ripe, LLC*, 538 B.R. 300, 302 (Bankr. S.D. Tex.

2015) ("The party invoking the stay has the burden to show that it is applicable"). Neugebauer failed to satisfy his burden.

In an effort to wrongfully extend and use the automatic stay to shield himself (a non-debtor) from personal liability arising from individual claims from other non-debtors (Appellants), Neugebauer mischaracterized the claims Appellants are asserting against Neugebauer in the Arbitration in an effort to shoehorn himself into one of the rare and limited exceptions to the general rule that the automatic stay does not extend to non-debtors (none of which apply here). For example, Neugebauer argues that the claims against him in the Arbitration "belong to the Debtor's bankruptcy estate." (ROA.615). That is incorrect.

First, Neugebauer tried to hide the ball from the Bankruptcy Court by ignoring the claims Appellants asserted against Neugebauer in the Supplemental Statement of Claim against Neugebauer. (ROA.677-683). Those claims, which are for defamation, business disparagement, tortious interference with existing contracts, and tortious interference with prospective business relations, are clearly direct and personal claims of Appellants against Neugebauer, personally. (ROA.677-683).

There can be no legitimate argument that such claims are derivative, somehow impact the estate, and/or justify extending the automatic stay to the non-debtor Neugebauer. Neugebauer bears the high burden of establishing that one of the "rare exceptions" to the general rule applies and justifies extending the automatic stay to

him (a non-debtor). *See In re Divine Ripe, LLC*, 538 B.R. 300, 302 (Bankr. S.D. Tex. 2015) ("The party invoking the stay has the burden to show that it is applicable"). Neugebauer failed to satisfy his burden. Thus, the automatic stay should not be extended to Neugebauer, and the Judgment should be reversed.

Moreover, and importantly, ***the Trustee agreed that Appellants are <u>not</u> pursuing estate claims in the Arbitration.*** (ROA.2047-2050) Appellants worked diligently and cooperated with counsel for the Trustee to ensure that Appellants and the Trustee are aligned, and in agreement, regarding (i) which specific claims are being pursued by Appellants against Neugebauer in the Arbitration, and (ii) that those claims are *not* estate claims and do not adversely impact the estate (*i.e.*, do not violate the automatic stay).

The stipulation identifies the specific claims Appellants are continuing to pursue against Neugebauer in the Arbitration (and were allowed to continue to pursue against Neugebauer by the Bankruptcy Court notwithstanding its entry of the Order and the District Court's resulting entry of the Judgment) and expressly states that it was designed to accomplish the following:

> "Ensure that, notwithstanding this bankruptcy proceeding, the Arbitration be permitted to proceed with respect to the direct claims asserted by the Ayers Parties against Neugebauer, and to clarify and ensure that the claims being pursued by the Ayers Parties against Neugebauer in the Arbitration, which are being permitted to proceed under this *Stipulation and Agreed Order*, do not include any claims against the Debtor or the Estate, any claims of the Debtor or the Estate, or affect or impair any claims or causes of action of the Estate against

any person (or any claims or causes of action Ayers may have against any other person, including the Estate)."

(ROA.1043-44).

Neugebauer claims the Arbitration constitutes a violation of the automatic stay because, according to Neugebauer, "[o]nly the Trustee has standing to pursue most, and possibly all, of the claims asserted in the [Arbitration] because they are property of the estate." (ROA.619). Neugebauer is the only one making this claim, and he is doing so in an effort to protect himself (not the estate).

Thus, it is not only Appellants who disagree with Neugebauer's incorrect contention that estate claims are being pursued in the Arbitration; the Trustee (*i.e.*, the individual appointed to administer the estate) does as well. (ROA.2047-2050). The irony in Neugebauer's position is that, through his Motion, it is Neugebauer (not the Appellants) who is trying to step into the shoes of the Trustee because Neugebauer finds it "personally expedient to assert the rights of [the Trustee] even though [the Trustee] is present in the proceedings and is capable of representing himself." *Kane*, 843 F.2d at 644. Neugebauer should not be permitted to wrongfully use the automatic stay to (i) shield himself (a non-debtor) from personal liability, (ii) cause Appellants to suffer unnecessary, unfair, and prejudicial delay and expense, and (iii) even worse, obtain a monetary award against Appellants for alleged

violations of the automatic stay (*i.e.*, the award included in the Judgment). For these reasons, the Judgment should be reversed and vacated.[5]

## D.    Neugebauer should not be rewarded for his gamesmanship and unclean hands.

On May 22, 2023, the Bankruptcy Court held a hearing (the "May 22 Hearing") regarding various "emergency" motions, including Neugebauer's Emergency Motion for Entry of an Order Enforcing the Automatic Stay Against the Ayers Parties (Dkt No. 44). Neugebauer was represented by lawyers from two different law firms at the May 22 Hearing – (i) Jackson Walker LLP, and (ii) Bonds Ellis Eppich Schafer Jones LLP ("Bonds Ellis"). (ROA.1587-88).

During the May 22 Hearing, Christian Ellis from Bonds Ellis represented to the Bankruptcy Court that "we've just been engaged" and claimed that his law firm needed "some time to be able to catch a breath, get our legs under us, and figure out what is really happening here." (ROA.1605, 1611). But Mr. Ellis failed to disclose

---

[5]    The District Court did not address and instead concluded that Appellants waived the issue of whether the Bankruptcy Court erred in ruling that Appellants willfully violated the automatic stay because Appellants either failed to brief or "inadequately briefed" same. (ROA.2295). The District Court also reached the same conclusion for two other issues, though such conclusion is confusing due to the fact that the District Court inconsistently refers to the three issues as "Issues one, two, and three" and, later, as "issues 1, 2, and 4." (ROA.2295-2296). In any event, Appellants dedicated five pages of their brief to the District Court to the following issue: "[T]he Appealed Order should still be reversed because Appellants did not violate the automatic stay." (ROA.2134-2139). As such, Appellants did not fail to brief – or inadequately brief – this issue, and therefore the District Court erred in determining that Appellants waived it.

that, at the same moment he was asking the Bankruptcy Court for more time "to get up to speed," his law firm apparently already had sufficient knowledge about the issues to file a back-up state court lawsuit in Dallas County against Appellants (the "State Court Lawsuit"). (ROA.819-825). The State Court Lawsuit was a carefully calculated end around in case the Bankruptcy Court denied Neugebauer's Motion (which, for purposes of Neugebauer's attempt to stay the Arbitration, the Bankruptcy Court ultimately did deny such request). (ROA.819-825).

Mr. Ellis' simultaneous presentation of an argument to the Bankruptcy Court during the May 22 Hearing while his law firm filed the State Court Lawsuit is no exaggeration. The May 22 Hearing began at 1:35 pm and did not conclude until 3:00 p.m. (ROA.1645). The file-stamp on the State Court Lawsuit shows it was filed on May 22, 2023, at 1:55 pm. (ROA.819). Thus, the State Court Lawsuit was literally filed by Neugebauer during the middle of the May 22 Hearing with the Bankruptcy Court.

The hypocrisy and duplicity of Neugebauer filing a state court lawsuit against Appellants while Neugebauer's lawyers were simultaneously before the Bankruptcy Court making the argument that Appellants cannot pursue their personal claims against Neugebauer due to the automatic stay (and, thus, were violating the automatic stay by doing so and should be sanctioned) is shocking.

Incredibly, after Neugebauer decided to (i) file the State Court Lawsuit for the purpose of imposing an additional hurdle for Appellants to clear in order to pursue their claims against Neugebauer, and (ii) intentionally conceal the State Court Lawsuit from the Bankruptcy Court and Appellants, Neugebauer filed the Amended Motion requesting that the Bankruptcy Court issue an order finding that Appellants (i) violated the automatic stay, and (ii) should be required to pay Neugebauer damages, including punitive damages. (ROA.613-629).

Thus, in addition to the reasons set forth above explaining why the Judgment should be reversed and vacated (*i.e.*, Neugebauer's lack of standing and no violation of the automatic stay on the part of Appellants), Neugebauer's gamesmanship and litigation tactics should not be rewarded through the improper and undeserved windfall provided to him in the Judgment.

### E.    Alternatively, if the Court does not reverse the Judgment in its entirety, the monetary damages should be significantly reduced.

Even if there was a stay violation (there was not) *and* Neugebauer had standing (he does not), Neugebauer's alleged "damages," which are the attorney's fees Neugebauer incurred as reflected in the invoices from the two law firms representing him: (i) Bonds, Ellis, Eppich, Schafer, Jones, LLP ("Bonds Ellis") and

(ii) Jackson Walker LLP ("Jackson Walker),[6] such alleged "damages" would still not be recoverable for the following reasons:

- The vast majority of the attorney's fees sought by Neugebauer relate to issues that would have been addressed (and, thus, incurred by Neugebauer) irrespective of any alleged stay violations;

- Neugebauer is culpable for any fees incurred on an allegedly "emergency" basis;

- Any fees related to the State Court Lawsuit filed by Neugebauer as part of Neugebauer's "Plan B" to his efforts to convince the BK Court to extend the protections of the automatic stay to Neugebauer (a non-debtor) related to the arbitrability of the claims being asserted against Neugebauer in the JAMS arbitration (not alleged stay violations);

- Fees incurred in relation to activities such as preparing Neugebauer for a deposition in the JAMS arbitration would be incurred irrespective of any alleged stay violations given that the Bankruptcy Court ordered that the claims being pursued by Appellants in the Arbitration against Neugebauer will be permitted to proceed;

---

[6]    The attorney's fees invoices from Bonds Ellis and Jackson Walker were Exhibits 25-28 introduced by Neugebauer during the hearing on Neugebauer's Motion. (ROA.1380-1413).

- Some of the activities listed in the fee invoices appear to have no relation whatsoever to the Ayers Parties, the Arbitration, and/or alleged stay violations;

- The fees requested were not reasonable and necessary given the *significant* number of attorneys and timekeepers Bonds Ellis and Jackson Walker utilized for tasks that could have been handled by one attorney (or, at minimum, less attorneys).

### (1)   *Neugebauer would have incurred the vast majority of the attorney's fees awarded in the Judgment irrespective of any alleged stay violations.*

Based upon a review of the Bonds Ellis and Jackson Walker attorney's fees invoices submitted by Neugebauer into evidence during the hearing on Neugebauer's Motion, it appears that only a small portion of the fees related to any work performed by Neugebauer's lawyers in the Arbitration. (ROA.1380-1413).

In fact, the only time entries that appear to relate to work performed in the Arbitration are the Jackson Walker time entries from May 5, 2023, through the date of the one telephonic hearing attended by the Jackson Walker lawyers in Arbitration (*i.e.*, May 8, 2023). (ROA.1394-1413). Those entries reflect work performed by the following Jackson Walker lawyers: (i) Bradley Knippa (totaling 19 hours), (ii) Josh Romero (totaling 9.3 hours), and (iii) Bruce Ruzinsky (totaling 1.1 hours). *See id.*[7]

---

[7]   Any work performed by Bonds Ellis in relation to the JAMS arbitration during this same time period, if any, would have been unnecessarily duplicative given that

Moreover, those time entries include block billing that reflects work performed that has no relation to the JAMS arbitration or the Ayers Parties. (ROA.1394-1413).[8]

All the briefing and arguments that were prepared by Neugebauer's legal team and presented to the Bankruptcy Court related to contentions that Neugebauer would have made if the procedural posture was different and the Appellants had originally filed a motion for determination that the automatic stay does not apply to the claims Appellants desire to pursue against Neugebauer in the Arbitration or, in the alternative, for relief from the automatic stay.

For example, as admitted by one of Neugebauer's lawyers who testified at the hearing on Neugebauer's Motion (Brandon Jones), Neugebauer would have made the same arguments that he has presented to the Bankruptcy Court, during the various hearings and through the multiple briefs submitted by Neugebauer, in response to any stay relief motion filed by Appellants (*e.g.*, Neugebauer would have still *incorrectly* contended that Appellants are attempting to pursue estate claims and, thus, the automatic stay should be extended to protect the non-debtor Neugebauer). (ROA.1878-1880). ("So if you would have stopped and filed a stay relief motion,

---

Jackson Walker handled the telephone hearing in the JAMS arbitration on May 8, 2023. (ROA.1380-1413).

[8]    The highlighted portions of the Jackson Walker invoices reflect the work performed that appears to have no relation to the Arbitration or the Ayers Parties. (ROA.1394-1413).

we would have litigated the issues with regards to whether or not those claims are arguably property of the estate.").

Mr. Jones further admitted that he did not perform an analysis to determine what work and associated fees, if any, would have been performed and incurred irrespective of any alleged stay violations. (ROA.1878-1880).

When that analysis is considered (as outlined herein), it becomes clear that – irrespective of any alleged stay violations – Neugebauer would have incurred the same (or substantially the same) amount of attorney's fees for work performed in relation to the extensive briefing and proceedings before the Bankruptcy Court. Trustee's counsel said it well during the hearing when he stated as follows:

> "I think Mr. Potter has a fair point that determining issues of property of the estate was an inevitable discourse that was going to happen. So as far as that's concerned, we were going to be here on these complicated issues in one way or another. And so are those unique and different damages? That's hard to say."

(ROA.1850-51).

Thus, at most, it appears the 29.4 hours worked by the Jackson Walker lawyers from May 5, 2023, through May 8, 2023, was attributable to work performed in relation to the Arbitration. (ROA.1394-1413). Based on the hourly rates listed for each of the Jackson Walker lawyers on the demonstrative provided by Neugebauer's counsel at the hearing, the related fees for such 29.4 hours totaled $24,093. Moreover, as discussed above, some of those fees were incurred for work performed

by Jackson Walker for Neugebauer that was completely unrelated to the Arbitration or Appellants.

**(2)     *Neugebauer is culpable for any fees incurred on an allegedly "emergency" basis.***

As shown by the timeline discussed herein, Neugebauer (and his lawyers) knew ***for months*** (before filing Neugebauer's "emergency" motion with the Bankruptcy Court) that (i) Appellants were continuing to prosecute their claims against Neugebauer in the Arbitration (in accordance with the Arbitrator's express order allowing Appellants to do so), and (ii) the Arbitration was ***not stayed***. However, Neugebauer made the conscious decision to ignore the issue for over 90 days and manufactured an alleged "emergency" in the hopes of strongarming an improper stay without the benefit of full briefing and careful consideration. Neugebauer cannot use an alleged "emergency," which was manufactured through his own creation, to claim that he should be awarded more fees because his lawyers were working on an "emergency" basis.

Neugebauer provided no legitimate explanation for why he waited until (i) ***after*** being sanctioned by the Arbitrator (Judge Harlan Martin), and (ii) only days before his ordered deposition in the Arbitration to first raise the alleged "emergency" issue with the Bankruptcy Court.

On August 17, 2022, Appellants filed their original statement of claim against Neugebauer in the Arbitration (in addition to counterclaims against Debtor – such

counterclaims were stayed when the Debtor filed the bankruptcy proceeding). (ROA.449-482). Subsequently, Appellants filed their Supplemental Statement of Claim against Neugebauer asserting additional claims against Neugebauer *only* for (1) defamation, (2) business disparagement, (3) tortious interference with existing contracts, and (4) tortious interference with prospective business relations. (ROA.571-77).

On February 8, 2023, With Purpose, Inc. (the Debtor) filed the underlying Chapter 7 proceeding. On February 15, 2023, counsel for Appellants sent JAMS a letter notifying the arbitrator that Appellants had received notice indicating the Debtor filed bankruptcy under Chapter 7. (ROA.684-87). The letter included the following:

> "The bankruptcy involves only Counter-Respondent With Purpose, Inc. d/b/a GloriFi and does not involve Toby Neugebauer individually and [Ayers] intends to continue prosecuting [his] claims against Toby Neugebauer individually."

(ROA.684).

Counsel for Appellants copied Neugebauer on the e-mail transmitting the February 15 letter to JAMS. (ROA.688). Thus, Neugebauer *knew*, at the latest, on February 15, 2023 (91 days *before* Neugebauer filed his "emergency" motion), that the Arbitration was not stayed. As Appellants informed Neugebauer they would, Appellants continued prosecuting their claims against Neugebauer in the Arbitration and incurred significant fees and costs in doing so.

Beginning on February 17, 2023, Appellants' counsel wrote Neugebauer directly (because he was proceeding in the Arbitration *pro se*) five times asking Neugebauer for a convenient date for his deposition. In the last of the requests, Appellants' counsel told Neugebauer that, if he would not provide a date, Appellants would unilaterally choose a date for the deposition. Neugebauer responded to various e-mails but never provided the requested deposition dates. Accordingly, Ayers' counsel noticed Neugebauer's deposition for February 27, 2023. (ROA.689-691).

On February 22, counsel for Appellants received a voicemail from Clay Taylor and Christian Ellis who, at the time, were both attorneys practicing at the law firm Bonds, Ellis, Eppich, Schafer, Jones LLP (Mr. Taylor has subsequently moved to a different law firm). In the February 22 voicemail, Mr. Taylor and Mr. Ellis inquired about the Neugebauer deposition and the status of the Arbitration. Counsel for Appellants sent Mr. Taylor and Mr. Ellis an e-mail asking if they represent Neugebauer in the Arbitration. Mr. Ellis responded: "Please note that this Firm represents With Purpose, Inc. in a Chapter 7 bankruptcy proceeding, and at this time does not represent Mr. Neugebauer in the JAMS proceeding."

Mr. Ellis also asked whether the Arbitration was stayed due to GloriFi filing the Chapter 7 bankruptcy proceeding. On February 22 (84 days *before* Neugebauer filed his "emergency" Motion), Counsel for Appellants responded as follows – again

telling Neugebauer and his lawyers that the Arbitration was *not* stayed with respect
to the claims against Neugebauer:

> We acknowledge that the claims in the JAMS proceeding asserted against, and by, With Purpose, Inc. (the Debtor in the Chapter 7 proceeding) are currently stayed.
>
> However, the claims in the JAMS proceeding asserted against Mr. Neugebauer (who is not the Debtor in the Chapter 7 proceeding) are not stayed.
>
> Thanks,
> Chase
>
> **Chase Potter**
> **Rogge Dunn Group P.C.**
> 500 N. Akard, Ste. 1900
> Dallas, Texas 75201
> Direct: 214-747-1398
> Cell: 903-217-4607
> Potter@RoggeDunnGroup.com

(ROA.692).

On February 24 (the afternoon before the deposition noticed for the following
Monday morning), Mr. Taylor called counsel for Ayers and stated Neugebauer
would not be attending the noticed deposition. The same day (*i.e.*, February 24),
counsel for Ayers sent an e-mail to Mr. Taylor (with copy to the Trustee and the
Trustee's counsel), which included the following:

> *"The claims against Mr. Neugebauer personally (who is not the Debtor in the Chapter 7 proceeding)* **are not stayed***."*

> *"Accordingly, because you have informed us that Mr. Neugebauer will not be attending his deposition on Monday as noticed (and has refused to provide alternative dates), we will proceed with a motion to compel Mr. Neugebauer's deposition in the JAMS arbitration proceeding."*

(ROA.695) (emphasis).

Thus, it cannot be disputed that, no later than February 24, 2023 (*i.e.*, 82 days *before* Neugebauer filed his "emergency" motion to stay the Arbitration), Neugebauer, his lawyers, and the Trustee all *knew* the Arbitration was *not* stayed. But neither Neugebauer – nor anyone else – filed a motion to stay the Arbitration. That did not happen until after the Arbitrator (Judge Harlan Martin) sanctioned Neugebauer and ordered him to appear for his deposition on May 23, 2023. (ROA.701-02).

On February 27, 2023, Appellants filed their Motion to Compel Neugebauer's deposition in the Arbitration. (ROA.703-09). Counsel for Appellants provided Neugebauer a copy of the Motion to Compel via e-mail (once again alerting Neugebauer that Appellants were prosecuting their claims against Neugebauer in the Arbitration). (ROA.713). On March 2, 2023, the Arbitrator signed an Order compelling Neugebauer to sit for his deposition on March 17, 2023. (ROA.714-15). Within that Order, the Arbitrator addressed the issue of whether the stay applies to the Arbitration and found as follows:

> *"Ayers' original Counterclaim stated against With Purpose, Inc. d/b/a GloriFi was stayed following its filing Petition in Bankruptcy. **The stay does not apply to the individual, Toby Neugebauer and Ayers is entitled to proceed to prosecute his claims against Neugebauer.**"*

(ROA.715) (emphasis).

Neugebauer did not attend his deposition on March 17 as ordered by the Arbitrator. Thus, on March 23, 2023, Appellants filed a Motion for Sanctions against

Neugebauer. (ROA.716-724). Counsel for Appellants provided Neugebauer a copy of the Motion for Sanctions via e-mail (again alerting Neugebauer that the Arbitration was not stayed). (ROA.730).

On April 25, 2023, after providing Neugebauer more than sufficient time to respond to the Motion for Sanctions, the Arbitrator signed an order requiring Neugebauer to appear on May 3, 2023, for his deposition and stated that "Neugebauer's failure to comply with this ORDER will result in sanctions." (ROA.731-32). The Arbitrator also scheduled a status conference for May 8, 2023. Neugebauer once again failed to attend the deposition ordered by the Arbitrator.

On May 5, 2023, counsel for Appellants received a call from an attorney at Jackson Walker indicating that the law firm of Jackson Walker was being retained "for the limited purpose of attending the hearing on May 8." The Arbitrator held the hearing on May 8, 2023, and subsequently issued an order imposing monetary sanctions against Neugebauer and requiring Neugebauer to appear for his deposition on May 23, 2023 (a date that was agreed upon, or – at minimum – not objected to, by Neugebauer and his counsel during the hearing). (ROA.701-02).

As part of his efforts to create the appearance of an "emergency," Neugebauer waited 9 days after the Arbitrator announced his ruling (*i.e.*, that Neugebauer was ordered to appear for his deposition on May 23, 2023) before filing the Motion. Neugebauer should not be rewarded for manufacturing an alleged "emergency."

In addition, the fee invoices show that the Jackson Walker lawyers representing Neugebauer were aware of and discussing the deposition of Neugebauer in the Arbitration as early as February 22, 2023 (*i.e.*, more than 70 days before Neugebauer unleashed his legion of lawyers to perform a flurry of alleged "emergency" work). (ROA.1394-1413).

For these reasons, Neugebauer should not be permitted to recover any fees that he claims were necessary because of an alleged "emergency."

### (3)    *Neugebauer cannot recover any fees incurred in relation to his secret State Court Lawsuit.*

As discussed above, Neugebauer filed a back-up state court lawsuit in Dallas County against Appellants (the "State Court Lawsuit") during the hearing the Bankruptcy Court conducted on May 22, 2023. (ROA.819-825).

None of the fees incurred in relation to the State Court Lawsuit should be recoverable because that lawsuit involved Neugebauer's application to stay the Arbitration on the basis of Neugebauer's unsuccessful contention that the claims asserted by Appellants against Neugebauer in the Arbitration are not arbitrable (instead of any claims related to alleged stay violations). (ROA.822-843). Thus, the attorney's fees incurred by Neugebauer in relation to the State Court Lawsuit are not recoverable.

**(4)     *Neugebauer cannot recover any fees that have no relation to the Arbitration or Appellants.***

Some of the time entries in the Jackson Walker invoices include time for work that appears to be completely unrelated to Appellants, the Arbitration, and/or alleged stay violations. (ROA.1394-1413). The Ayers Parties have highlighted the time entries in the Jackson Walker invoices that appear to have no relation to Appellants, the Arbitration, and/or alleged stay violations. (ROA.1394-1413). Appellants contend that the fees incurred in relation to the highlighted entries are not recoverable.

**(5)     *Neugebauer cannot recover any unreasonable and/or unnecessary fees that resulted from Neugebauer's legion of attorneys performing duplicative or unnecessary work.***

Neugebauer utilized *multiple* lawyers to handle the same hearings and perform similar tasks before the Bankruptcy Court that were handled by only one attorney for Appellants. For example, in addition to the Jackson Walker lawyers who attended the first hearing and billed their time for doing so, the Bonds Ellis firm billed for five attorneys in relation to the first hearing before the Bankruptcy Court (two of whom watched via WebEx) and only one of whom had a speaking role during the hearing. (ROA.1873-75). By comparison, Appellants had only one attorney in attendance for the very same hearing who handled all the issues presented during the hearing.

By way of another example, on May 19, 2023, alone, a total of 14 timekeepers from Jackson Walker and Bonds Ellis billed Neugebauer for a collective total of 61.3 hours in the span of only one day. A quick review of the Jackson Walker and Bonds Ellis invoices submitted by Neugebauer reveals numerous other days when multiple lawyers worked for very long periods of time on similar tasks.

Neugebauer is not entitled to any of the alleged "damages" he sought (or was awarded) for the multitude of reasons discussed herein. However, in the alternative and only to the extent the Court does not reverse the Judgment as requested (*i.e.*, issue a ruling that Neugebauer is not entitled to any amount from Appellants), the monetary award issued in favor of Neugebauer in the Judgment should be *significantly* reduced for the reasons outlined herein, including to account for the unnecessary and duplicative work performed by the massive number of lawyers working for Neugebauer.

## <u>CONCLUSION</u>

For these reasons, Appellants respectfully request that the Court (i) reverse and vacate the Judgment, and (ii) render judgment that Neugebauer shall take-nothing on the claims Neugebauer asserted against Appellants in the underlying bankruptcy proceeding. Appellants further request any additional relief to which they have shown themselves to be justly entitled.

Respectfully submitted,

*/s/ Chase J. Potter*
**CHASE J. POTTER**
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com

**IACUONE MCALLISTER POTTER PLLC**
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone:  (214) 432-1536

**ATTORNEYS FOR APPELLANTS**


**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's ECF system on this 4th day of August, 2025.


*/s/ Chase J. Potter*
CHASE J. POTTER

## <u>CERTIFICATE OF COMPLIANCE</u>

(1)     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1 this document contains 9,319 words.

(2)     This document complies with the typeface requirements of Fed. R. App. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point size font.

*/s/ Chase J. Potter*
CHASE J. POTTER